IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01288-RBJ

JUDITH CROSLEY, O/B/O M.G., a minor child,

Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of the Social Security Administration,

Defendant.

---

## ORDER

---

This matter is before the Court on review of the Commissioner's decision denying

plaintiff M.G.'s application for Supplemental Security Income pursuant to Title XVI of the

Social Security Act.  M.G.'s mother, Judith Crosley filed this application on her daughter's

behalf.  Jurisdiction is proper under 42 U.S.C. § 405(g).  This dispute became ripe for decision

by this Court on May 20, 2013 upon the expiration of plaintiff's opportunity to file a reply brief.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties.

In reviewing a final decision by the Commissioner, the role of the District Court is to examine

the record and determine whether it "contains substantial evidence to support the

[Commissioner's] decision and whether the [Commissioner] applied the correct legal standards."

*Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998).  A decision cannot be based on

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit.  Fed.R.Civ.P. 25(d)(1).  By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988).  Substantial evidence requires "more than a scintilla, but less than a preponderance."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Procedural History**

Ms. Crosley first applied for benefits for her daughter in September 2008.  She alleges that her daughter has been disabled since the date of her birth in 1998.  Her initial application was denied in January 2009.  Ms. Crosley requested a hearing before an administrative law judge (ALJ), and the ALJ held a hearing on July 14, 2010.  Ms. Crosley and her daughter were not represented by counsel at that hearing.  In September 2010, the ALJ issued an opinion finding M.G. not disabled within the meaning of the Social Security Act ("the Act").  In March 2012, the Appeals Council denied Ms. Crosley's request for review, and shortly thereafter plaintiff filed a timely appeal with this Court.

**Facts**

In her application for benefits, Ms. Crosley described physical and mental impairments that constituted M.G.'s disability.  The ALJ found that none of these impairments constituted legal disability under the Act.

M.G.'s Medical History

On May 21, 1999, M.G. saw pediatric neurologist Leston Nay.  Dr. Nay found no abnormalities and reported that M.G. "in every respect seems normal," although he noted that a speech pathologist thought M.G. might be less verbal than most children her age.  R. 536.  A

record from Southwest Pediatric Associates, dated December 22, 2004, notes that M.G. was diagnosed with attention deficit disorder (ADD).  R. 538-39.

Dr. Pakhi Chaudhuri evaluated M.G. for the first time on August 19, 2008.  Treatment notes indicate that M.G. was doing well at school, and that she regularly rode her bike and walked the dog.  R. 606.  Dr. Chaudhuri diagnosed M.G. with asthma and prescribed an albuterol inhaler to be kept at her school and to be used as needed due to exercise or upper respiratory tract infections.  R. 606, 611.  Nevertheless, Dr. Chaudhuri cleared M.G. for school, sports, and camp "without exception."  R. 606.  Dr. Chaudhuri also diagnosed M.G. with ADD without hyperactivity.  R. 606.  Initially, Dr. Chaudhuri prescribed Concerta to treat the ADD, (R. 604), but this medication made M.G. sick to her stomach and caused headaches, (R. 602).  Dr. Chaudhuri switched M.G. to different medication to avoid these side effects.  R. 601.  After the switch, Ms. Crosley told Dr. Chaudhuri that the side effects were gone, and that M.G.'s "concentration is good."  R. 600.  A later treatment note from Dr. Chaudhuri indicates that M.G. was diagnosed with dyslexia by the Liberty School.  R. 602.

In 2006, Barb Colbert, the school nurse at M.G.'s school, examined M.G.  R. 640.  Her evaluation revealed normal neurological results and only minor absences due to illness.  *Id.*

M.G. underwent a consultative examination with Dr. Ed Cotgageorge on January 7, 2009. R. 641.  Dr. Cotgageorge took a full medical and educational history.  He noted that M.G. was on medication for ADD and participated in tutoring and special resource classes at her school.  R. 642-44.  A battery of cognitive tests revealed that M.G.'s verbal comprehension was in the low average range, and her nonverbal reasoning and concentration abilities were in the average range.  R. 647.  Dr. Cotgageorge concluded that M.G. suffered from some "mild difficulties on

some of the tasks that are associated with sustained attention," probably associated with some type of dyslexia.  R. 647-48.

Drs. Pamela McKenzie and James J. Wanstrath reviewed M.G.'s records in the course of a Childhood Disability Evaluation.  R. 654-58.  These non-examining physicians concluded that M.G. had less than marked limitations in the areas of acquiring and using information, attending to and completing tasks, caring for herself, and physical health.  *Id.*  They observed no limitation in the categories of interacting and relating with others and moving about and manipulating objects.  *Id.*

<u>M.G.'s Performance in School</u>

The record reflects that between 2006 and 2010 M.G. participated in Individualized Education Programs (IEPs).  M.G.'s second grade evaluation by school psychologist John Persing revealed nonverbal reasoning skills that were stronger than her verbal reasoning skills. R. 631.  Mr. Persing classified her verbal reasoning abilities as low average and her perceptual reasoning as high average.  *Id.*  School nurse Barb Colbert noted that "M.G.'s ability to focus and sustain attention is noticeably improved when she is taking medication for ADD."  R. 629. Other school employees observed weaknesses in M.G.'s reading and verbal abilities and suggested that additional services and "more intensive intervention" would help her.  R. 628.

Subsequent IEPs in later years paint a similar picture of M.G.'s abilities.  In 2008 her IEP indicates that she had "great handwriting," and her assignments were usually "neat and organized."  R. 616.  However, she still required additional help on reading and writing assignments, and she was easily distracted.  *Id.*  As a result, the district provided M.G. additional time to complete assignments, more individualized attention, and special instruction on reading

and writing.  R. 622-23.  M.G. remained in general education classes—as opposed to special resource classes—eighty percent of the time.  R. 623.

In 2009, her evaluation stated that M.G. "made a lot of progress overall" in writing, time on task, task completion, and reading fluency.  R. 424.  She was still receiving special assistance the following year but was also performing at grade level in many areas.  R. 468.

Finally, her 2010 evaluation by special education teacher Chrissy Fast reveals continued struggles with reading and writing.  R. 510.  Ms. Fast, who observed M.G. over the course of two years, indicated that M.G. had slight problems expressing ideas in written form and in focusing on tasks, as well as an obvious problem reading and comprehending written material.  R. 510-11.  Ms. Frost did not identify any other behavioral or academic problems.

<u>ALJ's Opinion</u>

The Social Security Administration uses a three-step, sequential evaluation process to determine whether a minor is disabled.  42 U.S.C. § 1382c(a)(3)(c)(i).  Using that process, the ALJ determined that M.G.'s impairments did not rise to the level of a legal disability.  At step one, the ALJ determined that M.G. was not engaged in substantial gainful activity.  R. 16.  At step two, the ALJ determined that M.G. had the following "severe impairments": Learning Disorder - dyslexia and asthma.  *Id.*  At step three, the ALJ found that none of M.G.'s impairments met any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, nor were her impairments the functional equivalent of any of the listings.  R. 16, 18.  To complete that analysis, the ALJ considered whether M.G.'s impairments met or equaled the listings in sections 103.3 (asthma) and 112.02 (organic mental disorders).  R. 16-17.

**Analysis**

Ms. Crosley argues that the ALJ erred in the following ways: (1) the ALJ should have concluded that M.G.'s impairments met the listing requirements set forth at 20 CFR Part 404, Subpart P, Appendix 1, §§ 112.02 and 103.03; (2) she should have concluded that M.G.'s impairments were the functional equivalent of impairments listed in the above sections; (3) she should have considered additional evidence not referred to in the opinion; and (4) she should have informed Ms. Crosley of the issues to be determined at the hearing before asking her whether she wished to proceed without counsel.

<u>The ALJ's Finding that Plaintiff's Impairments Did Not Meet the Listing Requirements</u>

As explained above, the Social Security Administration uses a three-step process to determine whether a minor is disabled under the terms of the Act.  20 CFR 416.924.  The ALJ found that M.G. satisfied the first two requirements—she was not engaged in substantial gainful activity, and she suffered from severe, medically determinable impairments—but that her impairments did not satisfy the third step.

Ms. Crosley asserts that the consultative examination by Dr. Cotgageorge and the records in Exhibit 17F (R. 679-732) prove that M.G.'s disability meets or equals the disabilities contained in Listing 112.02.[2]  Pl.'s Br. 2-3.[3]  Meeting a listing requires proof of two things. First, the claimant must prove a "medically documented persistence" of at least one of a list of mental impairments.  Ms. Crosley contends that M.G.'s impairments are a medically documented persistence of either A(1) — "developmental arrest, delay or regression"—or A(10) —

---

[2] As the government points out in its brief, the listings for mental disorders in children are contained in part B and can be found at 112.02.  Def.'s Br. 15 n.4.

[3] Apparently Ms. Crosley does not challenge the ALJ's finding that M.G.'s asthma did not meet or equal the requirements in the listings at 103.03.

"disturbance of concentration, attention, or judgment."  20 CFR Part 404, Subpart P, Appendix 1, § 112.02.

Second, the claimant must prove at least two of the following: (1) "marked impairment in age-appropriate cognitive/communicative function;" (2) "marked impairment in age-appropriate social functioning;" (3) "marked impairment in age-appropriate personal functioning;" or (4) "marked difficulties in maintaining concentration, persistence, or pace." § 112.02 B(2).  An impairment is "marked" if it is "more than moderate but less than extreme" and the degree of limitation "is such as to interfere seriously with the ability to function . . . independently, appropriately, effectively, and on a sustained basis." § 112.00 C.  Ms. Crosley contends that the evidence demonstrates marked impairment in cognitive/communicative function and marked difficulty maintaining concentration, persistence, or pace.  Pl.'s Br. 3.

This Court is not convinced that the evidence pointed to by Ms. Crosley establishes such "marked" impairment-related limitations.  Almost all of the records contained in Exhibit 17F are contained elsewhere in the Administrative Record, a topic this Court deals with in more depth below.  Ms. Crosley points to Dr. Cotgageorge's findings that M.G. has some "verbal processing deficits," and that M.G.'s ability to process simple information without making errors is in the "Low Average range."  R. 647.  These limitations, Dr. Cotgageorge reasoned, "may make the task of comprehending novel information more time-consuming and difficult for M.G."  R. 647.  However, the ALJ did not ignore this evidence in her opinion.  Indeed the ALJ relied on the full report of Dr. Cotgageorge, which stated that "M.G.'s ability to sustain attention, concentrate, and exert mental control is in the Average range."  R. 646.  Moreover, Dr. Cotgageorge characterized M.G.'s impairments as "mild difficulties on some of the tasks that are associated with sustained attention."  R. 647.  Her overall IQ testing revealed abilities in the "average to low-average

range." R. 647. The ALJ explicitly afforded great weight to these portions of Dr. Cotgageorge's findings. R. 21-22. Taken as a whole, these conclusions suggest that M.G.'s impairments are less than "marked."

Other medical and educational evaluations in the administrative record bolster the ALJ's conclusions. The ALJ assigned great weight to the Childhood Disability Evaluation performed by Drs. Pamela McKenzie and James J. Wanstrath. R. 22. Their evaluation reached conclusions similar to those of Dr. Cotgageorge, namely that M.G. suffered from severe impairments that nevertheless did not meet or equal a listing-level impairment. R. 654.

Evaluations from Chrissy Fast, M.G.'s fifth grade special education teacher, paint a similar picture. In response to a questionnaire from the Social Security Administration, Ms. Fast identified obvious or slight problems in acquiring and using information and attending and completing tasks. R. 510-11. She did not observe problems in any of the four other areas of assessment. R. 512-516. According to Ms. Fast, these problems made it difficult for M.G. to keep up with her peers in understanding grade-level text and disrupted her focus. R. 510-11. Verbal reminders and prompts put M.G. "back on task," however. R. 511. The ALJ relied on Ms. Fast's observations in reaching her conclusion. R. 22.

Taken as a whole, the record contains substantial evidence upon which the ALJ relied in reaching her conclusions. None of M.G.'s medical or educational evaluations indicate impairments that meet or equal the "marked" or "extreme" severity required by the Childhood Impairment Listings. The evidence pointed to by Ms. Crosley does not suggest otherwise.[4]

---

[4] The ALJ gave "little weight" to Ms. Crosley's testimony. R. 22. The ALJ based this decision, in part, on the discrepancy between Ms. Crosley's testimony that M.G. was consistently diagnosed with ADD and her failure to produce "any record to support these statements." R. 22. Although Ms. Crosley might not have provided this record support, there nevertheless are indications in the record of diagnoses of ADD at different times, as noted in this order. In light of this evidence, the ALJ perhaps should have been less dismissive of Ms. Crosley's testimony. Nonetheless, whether M.G. was formally diagnosed with ADD is not a dispositive issue in this case. The diagnosis does not change the fact that the record indicates that her impairments were neither "marked" nor "extreme." *See*

<u>The ALJ's Finding that Plaintiff's Impairments Were Not Functional Equivalents of the Listing Requirements</u>

The Social Security Administration will also grant disability status for impairments that "functionally equal the listings." 20 CFR 416.926(a). An impairment is functionally equal to a listing if it is "of listing-level severity." *Id.* The regulations further define this as "marked limitations in two domains of functioning or an extreme limitation in one domain." *Id.* (quotation marks omitted). The domains of functioning include "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Id.*

The ALJ found that M.G. had less than marked limitations in the first, second, and sixth categories and no limitations in the remaining categories. R. 23-28. In reaching this conclusion, the ALJ relied on medical evidence of M.G.'s cognitive limitations from Drs. Wanstrath and McKenzie as well as classroom observations from Ms. Fast. R. 24. I do not agree that the ALJ "cherry picked" evidence from the record to support a conclusion. While the ALJ must fully develop the record, she "is not required to discuss every piece of evidence." *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (internal quotation marks and citation omitted).

Ms. Crosley points out that M.G. was receiving special educational accommodations throughout the week as a part of her IEP. Pl.'s Br. 4. She also suggests that the ALJ "ignored" some of M.G.'s low test scores in reading and writing. Id. The ALJ, however, explicitly acknowledged M.G.'s educational accommodations and her below average test scores. R. 20. In any event, participation in a special education program is not a dispositive factor in a functional

---

*Anderson v. Colvin*, 514 F. App'x 756, 761 (10th Cir. 2013) ("the failure to label [claimant's] cognitive impairment as Alzheimer's is harmless error because the focus of the analysis is on the functional limitations caused by the impairment, not on the label attached to the impairment") (citation omitted).

equivalence determination.  *See, e.g.*, *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1238 n.5 (10th Cir. 2001) (citation omitted).

Finally, Ms. Crosley argues that the ALJ erred by relying solely on test scores to reach her conclusion.  Pl.'s Br. 4.  Again, because the ALJ explicitly referred to the IEPs and Ms. Fast's in-class observations of M.G., (R. 24), this argument is unavailing.

Additional Evidence: Exhibit 17F

Ms. Crosley contends that the ALJ erred in concluding that M.G. was not disabled because the ALJ did not review all available evidence.  Pl.'s Br. 5.  Specifically, Ms. Crosley points to Exhibit 17F.  *Id.*

As far as this Court can tell, the only document in Exhibit 17F that was not included elsewhere in the record is M.G.'s 2010 IEP.  R. 721-32.  The document provides an assessment similar to those given in prior years.  According to the IEP, "M.G. has made great improvements in her writing this year—she is on the cusp of grade-level."  R. 722.  However, she "still needs help with her reading and writing fluency as well as dealing with distracting environments."  *Id.* As in prior years, her teachers again recommended that she spend eighty percent of her time in general education.  R. 729.

Because Exhibit 17F does not indicate that M.G.'s impairments were met, equaled, or were the functional equivalent of listed impairments, the ALJ's inability to consider the materials did not prejudice M.G.  Put another way, the materials in Exhibit 17F do not conflict with the ALJ's decision; they support it.   These materials were available to the Appeals Council as well. Therefore the ALJ did not err by making a decision before Ms. Crosley submitted Exhibit 17F.

<u>Adequacy of the ALJ's Pre-Hearing Explanation of the Issues</u>

M.G. argues that the ALJ erred by failing to inform her mother of the issues to be discussed at the hearing before Ms. Crosley decided to proceed without counsel. Pl.'s Br. 5. However, the written notice sent to Ms. Crosley before the hearing contained a list of the issues to be discussed. R. 66. Ms. Crosley acknowledged receipt of this notice. R. 74. This Court cannot find any cases suggesting that the ALJ must orally re-advise a claimant of the issues to be determined after sending such a notice.

M.G. raises a related issue, challenging the adequacy of her mother's waiver of counsel at the hearing. Pl.'s Br. 6. Specifically, she points to a case from the Southern District of Indiana that found reversible error in an ALJ's failure to explain to a pro se claimant "(1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Coleman v. Astrue*, 661 F. Supp. 2d 1016, 1023 (S.D. Ind. 2009) (citation omitted). Here, the ALJ included all of this information in the written notice of hearing. R. 70, 72. At the hearing, the ALJ further advised Ms. Crosley of her right to have a representative present, and verified that she was comfortable proceeding without one. R. 37-38. Such a combination of written and oral explanation constitutes sufficient advisement. *See Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996).

**Conclusion**

After examining the ALJ's opinion, the record, and briefing from both parties, I am satisfied that the ALJ applied the correct legal standards, and that her decision was based on substantial evidence. The ALJ analyzed the record thoroughly and thoughtfully, taking care to

include not only evidence that supported her decision but also that which cut against it.  The record illustrates that M.G.'s difficulties in the classroom are significant, but substantial evidence supports the ALJ's conclusion that those difficulties do not rise to the level of a legal disability for purposes of the Act.

**Order**

The decision of the Commissioner is AFFIRMED.

DATED this 18th day of September, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge